IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1999 SESSION

FILED

October 5, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9901-CC-00007 |
| Appellee, | ) | |
| | ) | MARION COUNTY |
| VS. | ) | |
| | ) | HON. THOMAS W. GRAHAM, |
| TOUSSIANT D. TURNER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Probation Revocation) |

FOR THE APPELLANT:

L. THOMAS AUSTIN
116 E. Cherry
P.O. Box 666
Dunlap, TN 37327-0666

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

KIM R. HELPER
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

JAMES MICHAEL TAYLOR
District Attorney General

STEVEN H. STRAIN
Assistant District Attorney General
265 Third Avenue, Suite 300
Dayton, TN 37321

OPINION FILED: _____

AFFIRMED

JOE G. RILEY, JUDGE

**OPINION**

The appellant, Toussiant D. Turner, appeals the Marion County Circuit Court's order revoking his probation and requiring him to serve the balance of an eight-year sentence in the Department of Correction. On appeal, he claims that the trial court abused its discretion in revoking his probation. We find no merit to this assertion and **AFFIRM** the judgment of the trial court.

**FACTS**

In March 1997, appellant pled guilty and was convicted of the sale and delivery of cocaine over 0.5 grams, a Class B felony. The trial court gave appellant an eight-year sentence in the Department of Correction.

After completion of the "boot camp" program, appellant was released onto probation. Appellant's supervision was transferred to Atlanta, Georgia, immediately upon his release from the penitentiary. In October 1998, appellant was arrested by the Atlanta police for felony possession of cocaine with intent to distribute, possession of marijuana, and a weapons charge. The probation officer filed a probation violation warrant.

Atlanta narcotics investigator, Robert Daniels, testified at the probation revocation hearing. Working undercover on October 12, 1998, Daniels observed a number of apparent drug transactions in an Atlanta housing development. The officer observed a person on the street collect money form various people, take the money to an apartment, get something in return, and then hand it over to the person who gave him the money. After one of these transactions, a woman walked directly past him with what looked like crack cocaine in her hand. Daniels alerted uniformed officers in the area, but they arrived too late to make an arrest.

2

Daniels continued his surveillance of the apartment. Between ten to fifteen minutes later, Daniels saw appellant leave the apartment with a black tote bag, place the bag in a car parked across the street, and return to the apartment.

Daniels then called uniformed officers back to the scene and instructed them to make inquiries at the apartment. Those inquiries resulted in a consent to search both the car and the apartment by Monique Waters, who was the owner of the car and the lessor of the apartment. When Waters gave her consent to search the car, she stated, "let me get the keys from Toussiant." Appellant told Waters, "no, baby, no," when she "came out with the keys."

The search of the car revealed one black tote bag which contained sixty-five "hits" of what appeared to be crack cocaine, a fully-loaded "Tech 9" semi-automatic weapon, and approximately $1,000 in cash. The search of the apartment revealed a small amount of marijuana and various cocaine manufacturing paraphernalia. Georgia law enforcement charged appellant with felony possession of cocaine with intent to distribute, possession of marijuana, and possession of a firearm during the commission of a crime. At the time of the probation revocation hearing, Georgia police did not yet have an analysis of the substance retrieved from the tote bag.

The trial court made the following finding:

"[T]his seems to be fairly straight forward as far as what appears by a preponderance of the proof to have occurred down there. . . . It appears [appellant] was involved in a location which was selling drugs that he in fact possessed . . . drugs, that he was charged ultimately with that crime. That's what the preponderance of the proof is, I don't think anybody could hold otherwise, so he's violated his probation."

## STANDARD OF REVIEW

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, 311. The

3

decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation is subject to an abuse of discretion standard of review, rather than a *de novo* standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community correction sentence has occurred. *Id.*; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment, rather than acting arbitrarily. Gregory, 946 S.W.2d at 832; State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

## PROBATION REVOCATION

Appellant claims that the trial court abused its discretion by revoking his probation. Appellant argues that at the time of the revocation hearing, he had not been tried or convicted on any of the Georgia charges. Essentially, appellant argues that the mere existence of new criminal charges against him is an insufficient ground upon which to base a probation revocation.

"A mere accusation, standing alone, is not sufficient to justify revocation. . . [t]he state is required to present at least some fact which would permit the trial court to make a conscientious and intelligent judgment as to the violation." State v. Mark Crites, C.C.A. No. 01C01-9711-CR-00512, Sumner County (Tenn. Crim. App. filed February 9, 1999, at Nashville)(citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. Crim. App. 1991)). In this instance, the state presented the testimony of Investigator Daniels who personally observed the appellant's violative actions.

We note that although Investigator Daniels did not have a lab report

4

confirming the identity of the substance discovered in the black tote bag, his testimony that the substance appeared to be crack cocaine was properly admitted. An officer may testify as to the identity of an illegal controlled substance based upon his experience. *See, e.g.*, State v. Anderson, 644 S.W.2d 423, 424 (Tenn. Crim. App. 1982); State v. Peter Gunn, C.C.A. No. 02C01-9511-CR-000352, Shelby County (Tenn. Crim. App. filed September 30, 1996, at Jackson).[1]

The proof revealed the appellant was in an apartment where apparent drug transactions were taking place. He carried a bag out of the apartment containing sixty-five hits of what appeared to be crack cocaine, a Tech 9 weapon, and $1,000 cash and placed it in a car. Cocaine manufacturing paraphernalia and marijuana were found in the apartment. This evidence was sufficient to permit the trial court to make a conscientious and intelligent judgment that appellant violated the terms and conditions of his probation.

## CONCLUSION

Based upon the foregoing, we conclude the trial court did not abuse its discretion by revoking appellant's probation and ordering him to serve the balance of his eight-year sentence in the Department of Correction. Thus, we **AFFIRM** the judgment of the trial court.

---

[1]We also note that the presence of the semi-automatic weapon and a large amount of cash in the same bag as the substance is indicative of drugs and may be considered in evaluating the identity of the substance.

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


_____
**DAVID G. HAYES, JUDGE**


_____
**L.T. LAFFERTY, SENIOR JUDGE**